IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| CLAYTON GEORGE, | ) Case No. 5:16cv1963 |
| | ) |
| Petitioner, | ) JUDGE JOHN R. ADAMS |
| | ) |
| v. | ) MAGISTRATE JUDGE |
| | ) THOMAS M. PARKER |
| ALAN J. LAZAROFF, WARDEN, | ) |
| | ) **REPORT AND RECOMMENDATION** |
| Respondent. | ) |
| | ) |

**I.    Introduction**

Clayton George, Ohio Inmate #A652-087, a prisoner at the Mansfield, Ohio Correctional Institution has filed a petition for writ of habeas corpus under 28 U.S.C. § 2254.[1] George was convicted of two counts of raping children under O.R.C. § 2907.02(A)(1)(b).[2] George was sentenced to serve two consecutive terms of life in prison without the possibility of parole.[3] The trial court adjudicated George to be a Tier III Sex Offender/Child Victim Offender and notified him of a mandatory period of five years post-release control.[4]

George's petition raises four grounds for relief.[5] On October 13, 2016, the State of Ohio moved to dismiss the petition on the ground that it is barred by the statute of limitations set forth in 28 U.S.C. § 2244(d). I recommend that the petition be dismissed with prejudice as untimely.

---

[1] ECF Doc. 1.
[2] ECF Doc. 5-1 at Ex. 6, Page ID#65.
[3] ECF Doc. 5-1 at Ex. 9, Page ID#96.
[4] Id.
[5] ECF Doc. 1

## II. Factual Background

Factual findings of the state court of appeal are presumed to be correct unless a petitioner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Moore v. Mitchell,* 708 F.3d 760, 775 (6th Cir. 2013). Here, the Ohio Court of Appeals made the following findings of fact:

> {¶2} K.S., and her three minor children, J.S., H.S., and A.S. lived with K.S.'s boyfriend, Mr. George, at a house on Kenmore Boulevard, and, later, at a house in Barberton. K.S. often worked the night shift as a manager at a local pizza parlor and Mr. George babysat the children while she was away from home. After an injury to A.S.'s neck, allegedly caused by Mr. George, the children were removed from K.S.'s custody and placed in the custody of Summit County Children Services. Following their removal, J.S. and H.S. alleged, on separate occasions, that Mr. George had been sexually abusing them from August of 2011, through April of 2012. J.S.'s and H.S.'s allegations led to a full police investigation which included individual interviews and physical examinations at Akron Children's Hospital. At the time of the investigation, J.S. was eight years old and H.S. was six years old.

*State v. George,* 9th Dist. No. 27279, 2014-Ohio-5781, 2014 Ohio App. LEXIS 5597 at *1-*2.

## III. Procedural History

### A. Original Trial Court Proceedings

On October 4, 2012 a Summit County, Ohio grand jury indicted George, charging him with two counts of rape in violation of Ohio Rev. Code § 2907.02(A)(1)(b), both first-degree felonies.[6] On October 10, 2012, he pleaded not guilty.[7] A jury found George guilty on both counts.[8] On February 10, 2014, after disposing of post-trial motions, the trial court sentenced George to serve two consecutive terms of life imprisonment without parole.[9] The trial court

---

[6] ECF Doc. 5-1 at Ex. 1, Page ID# 48.
[7] ECF Doc. 5-1 at Ex. 2, Page ID# 50.
[8] ECF Doc. 5-1 at Ex. 6, Page ID# 65.
[9] ECF Doc. 5-1 at Ex. 9, Page ID# 96.

2

adjudicated George to be a Tier III Sex Offender/Child Victim Offender Registrant and notified him of a mandatory period of five years post-release control.[10]

### B.    Direct Appeal

On July 7, 2014, George represented by counsel, filed a direct appeal in the Ohio Court of Appeals asserting four assignments of error:[11]

> FIRST ASSIGNMENT OF ERROR:
> The trial court committed plain error and abused its discretion by permitting the State to admit evidence of other crimes committed by Clayton George in violation of Evid. R. 404(B) and O.R.C. § 2945.59.
>
> SECOND ASSIGNMENT OF ERROR:
> Appellant was denied his Constitutional right to effective assistance of counsel at trial when trial counsel failed to object to the admission of evidence of prior crimes of Clayton George in State's Exhibit 5.
>
> THIRD ASSIGNMENT OF ERROR:
> The trial court committed reversible error by showing bias towards state's witnesses in violation of Appellant's right to a fair trial under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and Article I, Section 10 of the Ohio State Constitution.
>
> FOURTH ASSIGNMENT OF ERROR:
> The trial court abused its discretion when it permitted the State's "facility dog" to accompany the "vulnerable" child witnesses without a showing of necessity.[12]

On December 12, 2014, the Ohio Court of Appeals affirmed George's conviction.[13]

George did not file a timely notice of appeal in the Ohio Supreme Court.

---

[10] ECF Doc. 5-1 at Ex. 9, Page ID# 97.
[11] ECF Doc. 5-1 at Ex. 10, Page ID# 100-101.
[12] ECF Doc. 5-1 at Ex. 10, Page ID# 101.
[13] 9th Dist. No. 27279, 2014-Ohio-5781, 2014 Ohio App. LEXIS 5597.

### C. Attempted Appeal to Ohio Supreme Court

On November 3, 2015[14], George filed a *pro se* notice of appeal to the Ohio Supreme Court and a motion for leave to file a delayed appeal.[15] George argued that his appeal was untimely because his trial attorney misled him to believe that he would file an appeal for him.[16] The Ohio Supreme Court denied George's motion for delayed appeal on December 30, 2015.[17]

## IV. Federal Habeas Petition

On August 4, 2016, George filed a *pro se* petition for a writ of habeas corpus.[18] The petition raises four grounds for relief:[19]

**GROUND ONE:**
The trial court committed plain error and abused its discretion by permitting the State to admit evidence of other crimes committed by petitioner in violation of Evid.R.404(B) and O.R.C. § 2945.59.

**SUPPORTING FACTS:**
* * * There was a specific awareness of all parties and the court of a prior conviction for a sex offense. There were pretrial motions filed by both parties in regards to this issue, addressing the use of prior convictions to impeach petitioner if he would testify. The court took care throughout the trial to redact portions of the record containing this inadmissible evidence. However, state's exhibit 5, contained the statement "Clayton is a registered sex offender due to having sex with a 13 year old at the age of 18," which was sent to the jury for consideration in deliberations, the state did not offer this evidence in any other form throughout the trial.

The record demonstrates that this error had an effect on the outcome of the trial. The presiding judge and the state discussed the case with the jury after they were discharged, according to the state, one of the jurors indicated that initially there was no verdict reached, and that a lone juror could not be persuaded until he noticed the

---

[14] George's filings with the Ohio Supreme Court are marked RECEIVED on two different dates - October 13, 2015 and November 3, 2014. However, the Ohio Supreme Court's docket sheet shows that they were filed on November 3, 2014 and George has not argued that they were filed on the earlier date.
[15] ECF Doc. 5-1 at Ex. 13, 14, Page ID# 150, 152.
[16] ECF Doc. 5-1 at Ex. 14, Page ID# 153.
[17] *State v. George,* 144 Ohio St.3d 1438, 43 N.E.3d 450 (Table), 2015-Ohio-5468.
[18] ECF Doc. 1
[19] ECF Doc. 1, Page ID#5, 6, 8, 9.

4

statement in the medical records, Exhibit 5, that the petitioner was a registered sex offender. After reading that the juror indicated that he has changed his vote and agreed to find petitioner guilty of both counts. Clearly admission of this evidence had a substantial impact on the deliberations and verdict and as a result of this plain error petitioner's convictions should be overturned.

**GROUND TWO:**

Petitioner was denied constitutional right to effective assistance of counsel at trial when trial counsel failed to object to the admission of evidence of prior crimes of petitioner in state's exhibit 5.

**SUPPORTING FACTS:**

* * * trial counsel for petitioner was competent and effective throughout most of the trial, but for one very crucial omission of reviewing and objecting to the reference in the medical records that "Clayton is a registered sex offender for having sex with a 13 year old when he was 18." Had this exhibit been offered by the state at trial, and then been reviewed before the admission, it would have been noticed by trial counsel and ordered to be redacted by the court as all other exhibits were.

The omission here by counsel was critical and did result in prejudice to petitioner as evident by the juror that changed his vote to guilty only after reading the prejudicial statement. Petitioner was denied effective assistance of counsel, and the convictions must be reversed.

**GROUND THREE:**

The trial court committed reversible error by showing bias towards state's witnesses in violation of petitioner's right to a fair trial under the fifth, sixth, and fourteenth amendments to the United States Constitution, and Article I, Section 10 of the Ohio State Constitution.

**SUPPORTING FACTS:**

The following acts by the trial court show bias towards the state's witnesses and caused an unfair trial. 1) Referring to the alleged victims as "vulnerable witnesses" to the jury. 2) Leaving the bench during the State's direct examination of the alleged vulnerable witnesses, to sit next to them in an attempt to relay the whispered testimony into her ear to the jury. The judge returned to the bench during cross examination by petitioner's trial counsel.

The common meaning of the word, "vulnerable" is "capable of being physically or emotionally wounded, or open to attack or damage." For the court to portray the witnesses as "vulnerable" conveys a view that the court holds in great regard their status as presumed victims, rather than accusers, as they arrive to the court to

testify against the petitioner. The "vulnerable witness" language created the appearance that the court recognized these witnesses as outside the normal since they were children, this is a conclusion that the jury could have made on their own as the trier of fact. There was no curative instruction given to the jury with regard to the meaning of "vulnerable witness" to offset the prejudice created by this classification.

Midway through the state's direct examination of the alleged victims, the judge got down from the bench and sat next to the witnesses. At one point the one witness whispered her testimony into the ear of the judge, who then began relaying the statement to the jury until there was objection from counsel. The court then went on to attempt to persuade the witness to share her testimony with the jury, stating, "I think that the lawyers reminded me, I don't know that I can tell them. I don't know that I can say it. It might be against the rules for me to say it, but it's certainly not against the rules for you to say it ok?" This exchange sent a message to the jury that they are working together to provide the testimony. From the record it appears that the judge returned to the bench after the direct examination by the state, but returned to the bench during cross examination. The different treatment of the witness sent the message with regards to the court's position on the credibility of the witnesses. The court was acting more as an advocate for the witnesses than a neutral party. There was no curative instruction given to the jury to disregard the judge's unusual participation towards the witnesses. These acts created the perception of bias on the part of the court and caused the petitioner to have an unfair trial.

**GROUND FOUR:**
The trial court abused its discretion when it permitted the state's "facility dog" to accompany the "vulnerable" child witnesses without a showing of necessity.

**SUPPORTING FACTS:**
The state filed pre trial motions requesting the use of the "facility dog" at trial to accompany the alleged victims with no specific reason cited for this request other than "therapeutic purposes of enabling the child witness to testify with less stress and greater degree of accuracy." A discussion was held in open court with regard to the court's decision on the use of the "facility dog," but no evidence was taken or specific need for the use of the "facility dog" with these particular witnesses was offered by the state. The only direct discussion with regard to the dog occurred in an exchange between the court and a witness during questioning in a competency hearing, the witness was told that the "facility dog might not be able to attend trial with her because he had "not been as obedient this morning as might have been expected." When the court asked the witness would this upset her, she responded, "it will a little, but not much."

> The court did give some safeguards and instruction to the jury, the "Facility dog" was not permitted to be identified as the prosecutor's dog, was to be handled by the witnesses in court, or his handler who was not permitted to be identified as an employee of the Summit County prosecutor's office.
>
> The instructions were an attempt to control the effect of bias on the jury from the "facility dogs" presence, but the "vulnerable witness" language confuses and actually flies in the face of the instruction. The court took no testimony or evidence that this "Facility dog" was even needed to facilitate testimony from these witnesses. This tends to make the decision to permit the Facility dog to accompany these witnesses an arbitrary decision that was not based on any reasoning process other than the state's unjustified request. As a result, the court abused its discretion in allowing it to occur.
>
> There should have bene some showing of the need for the facility dog to bring forth testimony with respect to each particular witness. That showing would have protected against arbitrary decision-making with regard to the use of the "facility dog." The court had a duty to ensure that the "facility dog" does not distract the jury from testimony and evidence being presented. The presence of the "facility dog" should not be used to invoke sympathy or be considered in determination of credibility of the witnesses. Witnesses using a "facility dog" should not be referred to as "vulnerable witnesses" because this is not a neutral way of referring to them, and most likely effected the jury's perception of the witnesses and their credibility.[20]

## V.  Analysis

### A.  Preliminary Matters

28 U.S.C. § 2254(a) authorizes this court to entertain an application for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court." George fits this classification as he is in custody at an Ohio penal institution pursuant to a February 10, 2014 judgment of conviction of the Summit County Court of Common Pleas in case number CR 2012 09-2743. The warden's motion to dismiss asserts that George's petition is untimely under the provisions of 28 U.S.C. § 2244(d)(1) because the one year statute of limitations expired on April 14, 2015. George has not responded in opposition.

---

[20] ECF Doc. 1-1, Page ID#16-20.

### B. Applicable Law

#### 1. Statute of Limitations

As amended by § 101 of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"),[21] 28 U.S.C. § 2244(d)(1) provides that a person in custody under a judgment of a state court must file an application for a writ of habeas corpus within one year from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Subsection (A) established the principal statute of limitations for pursuit of habeas petitions under AEDPA. Subsections (B), (C) and (D) assign later statute of limitations commencement dates under specified conditions. Here, George has not alleged that there was an impediment to filing an application created by state action; he has not asserted that he is relying upon a newly recognized constitutional right; and he has not claimed that the underlying factual bases of his claims could not have been discovered through the exercise of due diligence. Consequently, subsections (B), (C) and (D) of 28 U.S.C. § 2241(d)(1) are not implicated in George's petition and his claims are governed by 28 U.S.C. § 2241(d)(1)(A).

---

[21] Pub. L. No. 104-132, 110 Stat. 1214.

### 2. Commencement of Limitations Period

The Ohio Court of Appeals affirmed George's convictions on December 31, 2014. Pursuant to Ohio S.Ct. Prac. R. 6.01(A)(1), George had 45 days in which to file his notice of appeal to the Ohio Supreme Court, but he did not do so. Thus, his conviction would have become final under § 2241 on February 14, 2015. However, February 14, 2015 was a Saturday and Monday, February 16, 2015, was a holiday, so George's conviction became final on Tuesday, February 17, 2015. The AEDPA statute of limitations expired one year later on February 17, 2016, absent statutory tolling under 28 U.S.C. § 2244(d)(2) or other tolling principles. Fed. R. Civ. P. 6(a); *Bronaugh v. Ohio,* 235 F.3d 280, 285 (6th Cir. 2000).

### 3. Applicability of Statutory Tolling

28 U.S.C. § 2244(d)(2) "provides for statutory tolling of the limitations period during the pendency of properly filed motions for state post-conviction relief, or other collateral review." See *Artuz v. Bennett,* 531 U.S. 4, 8-9 (2000). "The [statutory] tolling provision does not . . . 'revive' the limitations period (*i.e.*, restart the clock at zero); it can only serve to pause a clock that has not yet fully run." *Vroman v. Brigano*, 346 F.3d 598, 602 (quoting *Rashid v. Khulmann*, 991 F. Supp. 254, 259 (S.D.N.Y. 1998)). Once the limitations period has expired, state collateral review proceedings can no longer serve to avoid the statute of limitations bar. *Keeling v. Warden, Lebanon Correctional Inst.,* 673 F.3d 452, 460 (6th Cir. 2012).

George did not file a timely appeal to the Ohio Supreme Court. Therefore, the AEDPA statute of limitations began running on February 18, 2015, the day after the forty-five day filing period with the Ohio Supreme Court expired. The statute ran for 259 days until November 3,

9

2015, when George filed a notice of appeal and motion for delayed appeal to the Ohio Supreme Court.[22]

The statute of limitations clock remained stopped until December 31, 2015, the day after the Ohio Supreme Court denied George's motion for delayed appeal. *State v. George,* 144 Ohio St.3d 1438, 43 N.E.3d 450 (Table), 2015-Ohio-5468. Because George's motion for delayed appeal is a collateral proceeding and not direct review, the statute was not tolled for the additional 90 days he would have had to file a petition for writ of *certiorari* in the United States Supreme Court. *Searcy v. Carter,* 246 F.3d 515, 518-519 (6th Cir. 2001); *Stevenson v. Howes,* 407 F.App'x 881, 884 (6th Cir. 2011). An unsuccessful motion for a delayed appeal tolls the statute of limitations under 28 U.S.C. § 2244 (d)(2), but is not part of the direct appeal for purposes of 28 U.S.C. §2244(d)(1). For that reason, George's unsuccessful motion for delayed appeal tolled the running of the statute of limitations, but did not cause the statute to begin running anew. *Keeling,* 673 F.3d at 459.

The AEDPA limitations period began to run again on December 31, 2015 and continued until it expired on April 15, 2016. George did not file his petition for federal habeas corpus relief until July 26, 2016, more than three months after the statute of limitations expired. The petition is barred unless the expiration of the statute of limitations was tolled on equitable grounds or unless a manifest injustice would occur if the petition were dismissed.

### 4. Equitable Tolling

The AEDPA's statute of limitations is subject to equitable tolling, "when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond the litigant's control." *Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 749 (6th Cir. 2011)

---

[22] ECF Doc. 8-1 at Ex. 46, Page ID# 547.

(quoting *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010)), cert. denied, 133 S. Ct. 187 (2012). *See also*, *Holland v. Florida*, 560 U.S. 631, 649 (2010) (the statute of limitations for habeas petitions is "subject to equitable tolling in appropriate cases.") But equitable tolling is "sparingly" granted. *Hall,* 662 F.3d at 749 (quoting *Robertson*, 624 F.3d at 784).

A habeas petitioner is entitled to equitable tolling only if he meets his burden to demonstrate that (1) "he has been diligent in pursuing his rights;" and (2) that "an extraordinary circumstance caused his untimely filing." *Hall,* 662 F.3d at 750; *see also*, *Pace*, 544 U.S. at 418. George bears the burden to show he is entitled to equitable tolling. *McClendon v. Sherman*, 329 F.3d 490, 494 (6th Cir. 2003). The petitioner must point to extraordinary circumstances that prevented timely filing. A petitioner's *pro se* status and his unawareness of the law provide no basis for equitable tolling. *See Lattimore v. DuBois*, 311 F.3d 46, 55 (1st Cir. 2002); *Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000); *Felder v. Johnson*, 204 F.3d 168, 171 (5th Cir. 2000).

Applying these principles to George's case leads to the conclusion that equitable tolling cannot extend the statute of limitations. Here, George has not opposed respondent's motion to dismiss or met his burden of pointing to extraordinary circumstances that prevented timely filing of his petition. If the undersigned were to anticipate an argument from George on the issue of equitable tolling, as defendant does in his motion to dismiss, the argument would be that alleged misrepresentations by George's trial counsel prevented him from filing a timely petition. However, such an argument fails.

In his Ohio Supreme Court filings, George argued that his appeal to the state's highest court was delayed due to a misrepresentation of counsel.[23] George represented that he received a

---

[23] ECF Doc. 5-1 at Ex. 13, Page ID# 153.

11

letter from counsel in January 2015 after his convictions were affirmed on appeal.[24] In the letter, George's trial attorney, Donald R. Hicks, stated:

> I have obtained a copy of the decision of the Court of Appeals regarding the issues that were raised on your appeal. The Court of appeals has affirmed the judgment which was rendered by the Common Pleas Court.
>
> I would request that you write to me as I believe it is necessary to further pursue appellate issues. I had written to you about a month ago as I have continued to monitor your case and have firm beliefs concerning errors which occurred during the trial. I would like to involve other attorneys besides myself in any continued efforts to address appellate issues. I have spoken with other lawyers who have expressed an interest in assisting us.
>
> We have a limited time if we are going to take further action to appeal to the Ohio Supreme Court or seek other appellate action within the Ninth District Court of Appeals. I need your permission and cooperation if I am going to be able to further assist you. Please understand that there are time deadlines which control how soon we are required to act.[25]

George alleged that he responded "without delay" to this letter, giving Attorney Hicks permission to file "what was needed."[26] According to George, he did not hear from his attorney for over a month, so he asked his mother, Karen George, to contact Mr. Hicks. Karen George submitted an affidavit stating that she called Attorney Hicks on March 26, 2015 and that he told her that "the courts ruled against delayed appeals and for Clayton to talk to the lawyers there at prison to find someone to take his case to the federal court and that he would be writing Clayton."[27] George also submitted a May 4, 2105 letter from Attorney Hicks indicating that George's mother had called his office today (May 4, 2015) and left a message. The letter also stated, "I could not locate an attorney who was willing to take your case to the Ohio Supreme

---

[24] ECF Doc. 5-1 at Ex. 13, Page ID# 153.
[25] Id.
[26] No copy of the alleged letter from George is attached to the motion for delayed appeal.
[27] ECF Doc. 5-1 at Ex. 13, Page ID# 157.

Court. I would encourage you to act on your own behalf and find a lawyer who will seek a delayed appeal."[28]

These allegations and the exhibits attached to George's motion for delayed appeal relate to the untimeliness of his appeal to the Ohio Supreme Court. They do not directly relate, nor have they been asserted as a reason why George's habeas petition was untimely. Moreover, even assuming George believed that Attorney Hicks was going to file an appeal to the Ohio Supreme Court, he knew from the May 2015 letter that this had not happened. And when George received notice that the Ohio Supreme Court denied his *pro se* motion for delayed appeal, the statute of limitations for filing his federal habeas petition had not yet expired. George has not explained why he couldn't file a timely petition, and he has not argued that he was diligent in presenting his arguments to this court. The record compels the conclusion that he was neither prevented from filing nor diligent. I recommend that the court conclude that equitable tolling is unavailable.

### 5. Actual Innocence

In *McQuiggin v. Perkins*, ___U.S.___, 133 S. Ct. 1924, 1928, 185 L. Ed. 2d 1019 (2013), the Supreme Court held that when properly supported, an actual innocence claim can overcome the AEDPA's one-year statute of limitations. The Court noted that a claim of actual innocence is not a request for equitable tolling; rather, it is a request for an equitable exception to the AEDPA statute of limitations. *Id.* at 1931. A persuasive showing of actual innocence justifies an equitable exception to the statute of limitations because otherwise, a refusal to consider a habeas petition because of untimeliness could result in a fundamental miscarriage of justice. See

---

[28] ECF Doc. 5-1 at Ex. 13, Page ID# 158.

*Patterson v. Lafler,* 455 Fed. Appx. 606 (6th Cir. Jan. 9, 2012) (citing *Murray v. Carrier,* 477 U.S. 478, 495-96, 106 S.Ct. 2639, 91 Led.2d 397 (1986). The Supreme Court explained, however, that "tenable actual-innocence gateway pleas are rare." *McQuiggin*, 133 S.Ct. at 1928.

If a habeas petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims." *Schlup v. Delo,* 513 U.S. 298, 316, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). Thus, the threshold inquiry is whether "new facts raise [] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial." *Id.* at 317. To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id.* at 327. The Court has noted that "actual innocence means factual innocence not mere legal insufficiency." *Bousley v. United States,* 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup*, 513 U.S. at 324. The Court counseled, however, that the actual innocence exception should "remain rare" and only be applied in the 'extraordinary case.'" *Id.* at 321.

George has not presented any new evidence that would support an actual innocence claim. His grounds for relief all relate to alleged errors that occurred during the trial phase of his case. He has not shown that this is the rare case warranting an exception to the statute of limitations because of his actual innocence.

I recommend that the court grant the warden's motion to dismiss George's time-barred petition.

## VI. Determination of Whether to Grant a Certificate of Appealability
### A. Legal Standard

As amended by the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2253(c)(1) provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996)(quoting *Barefoot v. Estelle*, 463 U.S. 880, 893, n. 4 (1983)); *accord Slack v. McDaniel*, 529 U.S. 473, 483-484 (2000). The statute requires that certificates of appealability specify which issues are appealable. 28 U.S.C. § 2253(c)(3).

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. §

15

2254.  The rule tracks the requirement of § 2253(c)(3) that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a).  In light of the Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, a recommendation regarding the certificate of appealability issue is included here.

      **B.**      **Analysis**

Where, as here, a petition is to be dismissed on a procedural basis, the inquiry under § 2253(c) is two-fold.  In such cases, a certificate of appealability "should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Slack*, 529 U.S. at 485 (emphasis added).  As the Court explained, "[w]here a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further.  In such a circumstance, no appeal would be warranted."  *Id*. at 486.

If the Court accepts the foregoing recommendation, George cannot show that the Court's ruling on the procedural question is reasonably debatable.  As noted above, George does not deny that his petition is untimely and he has provided no basis for concluding that he is entitled to a delayed commencement of the limitations period under § 2244(d)(1)(B), (C) or (D), that he is entitled to statutory tolling under § 2244(d)(2), or that he is entitled to equitable tolling.  Nor has George submitted reliable evidence demonstrating that his is the rare petition which should be granted habeas review, despite its untimeliness, because he is actually innocent.  Thus, the

resolution of the limitations issue is not reasonably debatable, and the Court should conclude that George is not entitled to a certificate of appealability.

### VII. Recommendations

I recommend that the Court conclude that petitioner's application for a writ of habeas corpus is time-barred under 28 U.S.C. § 2244. The Court should grant the warden's motion to dismiss the petition with prejudice. If the Court accepts this recommendation, I further recommend that court deny a certificate of appealability.

Dated: June 22, 2017

Thomas M. Parker
United States Magistrate Judge

### VIII. Notice to Parties Regarding Objections:

Local Rule 73.2 of this court provides:

Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure. Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

Failure to file specific objections constitutes a waiver of any further right of appeal.

*Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); *Howard v. Secretary of*

*Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  The filing of objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).